Thank you your honor. As the court notes I represent BPL Medical and Jason Cardiff who will refer to collectively as BPL. BPL appealed a preliminary injunction. Oh before I forget I want to reserve five minutes for a rebuttal and ten minutes for my primary argument if that's acceptable. It's fine you have to watch the clock yourself but I'll try to help you. Yes BPL appealed a preliminary injunction imposing a receivership over the company. This is a company that manufactures Made in USA three-ply surgical quality masks that can be fit for both adults and children. BPL was not a party in the original lawsuit between Redwood Scientific and the FTC. BPL Redwood distributed and sold health supplements. Mr. Kuchel can I ask you a preliminary question? Yes sir. I can't tell from the briefing I think I know the answer. Are you today attacking both preliminary injunctions or only the initial preliminary injunction that applies to Cardiff? Yes yes I mean so the first the first injunction and the receivership was imposed over Jason Cardiff and his wife. It applies and then 18 months after the initial receivership order was entered over Redwood they the FTC then sought to impose receivership over BPL. We opposed the TRO was entered ex parte. We filed a motion to dissolve the TRO which the court denied. We cited Liu as part of our reasoning then subsequently the preliminary injunction was entered in the case over BPL and we're in action because the receivership was imposed just as the company ramping up manufacturing operations to comply with a 20 million face mask contract with the Department of Health and Human Services. We argued at that time that the public interest did not favor receivership and that the original reasons concern a dissipation of assets. We we opposed that and said the assets are all there. They're you know as to Cardiff they were down the street in a bank which was easily identified. If the first if the first preliminary injunction is not challenged then you know if we were to find that BPL fell within the terms of that even without considering whether or not there's an additional source from the second preliminary injunction then that would be dispositive wouldn't it? I don't think so. I would respectfully take issue with that. The reason being first off the order is very the actual order over BPL was very consistent with SEC versus Liu. I mean the received the Redwood receivership order is consistent because it limited assets only existing at the time of the TRO the preliminary. But that's not that's not right it's in three categories on the asset freeze and the third one doesn't have a temporal limitation and that's the one the district court invoked here right? And that's what the district court held. We would respectfully submit that the third under control directly or indirectly by Cardiff assets and then it identified assets that that were known at the time. So that was a general catch-all so that if the FTC found assets that were not known at the time but existed that would be well within the framework of that order. Otherwise it's just the phrasing of it having it you know. Wouldn't your reading make the third category just superfluous because the first one says all assets of all defendants at the time it was entered. The second then says all assets obtained by defendants after the TRO was entered if they're derived. And then the third one just says all assets under control directly or indirectly by Cardiff. If the first two operate in the way if the third one operates in the way you say it's duplicative of the other two I think it's a catch-all to identify assets that haven't been identified. They they went out of their way to identify these trusts but we say anything about identified in the first two. It just says all assets at the time and then all assets after. And if three has a temporal limitation it seems to me to the words are meaningless. They don't add a single thing. Tell me what they add if your reading is right. Well I think what they add is in the past tense referring to assets that exist at the time of the injunction. And it must be read in relationship to the second provision that talks about how it's it's related to the subject matter of the complaint. So the court. But don't we have I'm sorry finish it probably with Zoom. So finish what you're saying I wanted to ask you a It's very much like reading a contract that you have to read it as a whole. And so when you read these three provisions as a whole they're talking about particularly the second provision talks about assets that were derived from the subject matter of the lawsuit which is totally consistent with Lou. Which gets back to your original question is this completely dispositive. We don't think it is because Lou makes it clear that courts cannot simply enter orders requiring you know allowing seizure of assets that are not related to the subject matter of the underlying lawsuit. Okay before we get before we get to Lou here's my question for you. Yes sir. If you're not attacking the first injunction and the third clause that Judge Collins just read to you you you read is only relating to assets already identified or something like that. But the judge in the second injunction said let me make it clear what I meant the first time was precisely what what we're talking about today. And there's a lot of case law that says judges can clarify their injunctions. Now that injunction may be overbroad. It may be something you could have attacked. Right. But if you're not doing it and that's the way the judge interprets the third clause of the first injunction. How can you how can you get around that? Well I suppose in the broad sense we are attacking the injunction based on Lou. You know. Well that's why I asked. Yeah. You didn't you didn't appeal the first injunction did you? I don't off the top of my head recall. I think that's not the appeal in front of us today anyway. Right. The appeal in front of us today is from the second one. That I believe is exactly right. So interpreting an order in this case that doctrine on a cases doesn't strictly speaking apply because Judge Gee was not the judge who entered this particular order. Judge Otero entered it and then he you know left the hold. And so this is a an order that was drafted by the government and presented. It has all the elements that you would think of you know consider if you were construing a contract. Which while it's not a contract certainly it's a document that has to be construed in light of the the law the background of the law. Which is SEC versus Lou. As it then existed. And if it's overly broad then you know then it's overly broad. So we would. Are you what relief are you seeking here today? I'm asking for the preliminary injunction over VPL to be dissolved. Preliminary injunction be reversed and the receivership over VPL be you know the remainder of the case stays in force until we you know have an appeal on the merits. I know you wanted to save some time. So go ahead Judge Seiler. I just want to say you want it to be sent back on a hearing concerning the Lou case or you're not ready? Well we think we think Lou is dispositive. It is very clear that none of the assets from Redwood were used to finance or to operate VPL. None of the there's no allegation of unlawfulness or joint enterprise with Redwood and VPL. Obviously not because it was created 18 months after the fact. So what connection is there? Can a district court simply based on a court order for you know freeze and seize assets that are totally unrelated to the subject matter of the lawsuit and we respectfully submit that under SEC versus Lou there's there's two major holdings. I'm a little confused by that because I thought the argument was that the application of SEC versus Lou would sufficiently limit the the amount of underlying claims thereby secondarily affect the ability to freeze assets in a particular amount to satisfy the expected judgment. Now you seem to be saying that Lou applies directly to freezing orders and I that I didn't perceive to be your argument. Well I think I think your your understanding is correct but I think you know the FTC takes the position that the it doesn't you know Lou didn't apply to freeze orders but as a matter of logic and common sense if the court cannot seize or enter a judgment based on anything other than unlawful net profits or ill gotten gains in the underlying case it logically they cannot go out and simply freeze any asset that. Why is that so? Now put aside for a second how Lou is been over you know whether Lou overrules not previous Ninth Circuit law why can't the FTC when it finds conduct violating the Federal Trade Act get an injunction so that the people that were harmed can later seek seek damages or restitution from from the agency even if it can't? Well there's nothing in the statute that allows that there's nothing in the law of equitable restitution that allows that so if they proceed on on Section 13 B and seek equitable restitution which in every case they do they are limited by the confines of equitable restitution they can't go above and beyond it so it may be that in a case they'll inadvertently seize property that's untainted or gets in or once the FTC determines that the property is not tainted or is not related to the subject matter of the case it has an obligation to release that because they always have the option to proceed in ultimate judgment against assets owned by the individual and so that's a fight that remains for another day. I really want to be clear about what your position is because I thought you clarified it and now I'm confused by what you said so are you saying that lieu applies directly to freezing orders and limits what can go into an asset freezing order or are you just saying that lieu limits the ultimate underlying relief in the case and that those limits by limiting the amount of money then put a cap or put limits on what can be frozen to satisfy that do you see the yes sir yes sir I think it's a two-pronged issue one limits the amount of restitution that can be gained from someone's assets limiting its ill-gotten gains and unlawful profits but as a corollary to that the second part of it the principles in lieu it's not a direct holding but the principles in lieu logically and inescapably lead to the conclusion that the government can only get a judgment against the assets that are related to the underlying fraud they cannot seize assets as a pre-judgment writ of attachment which is a completely different animal and it's not a creature of equity and we're taking you judge go ahead judge Collins I just want to say well don't worry about your time I'll please answer judge Collins's questions thank you so you're saying that even if under lieu just use a hypothetical a defendant would likely be subject to you know a five million dollar judgment and had assets of five million dollars but none of them could that of the assets that were currently in the possession of so much going on you're saying that they couldn't freeze any of that and satisfaction of that judgment yes that's that's what I the principles of equitable restitution hold and what I think the law requires I wanted to ask you one other question and that's this you're assuming that lieu applies to the argument but isn't that essentially what's in front of the Supreme Court in AMG no Lou Lou does apply there's well it's not you may say that and that's a good argument but it doesn't apply on its face it interprets it interprets the Securities Exchange Act correct it interprets a provision of the SEC and it talks in very broad sweeping language I understand but the Federal Trade Act has a different says somewhat different language it may be less broad than the SEC Act I don't know but but it seems to me the issue in front of the court in AMG is how to interpret the language in the Federal Trade Act and I have no idea what they're gonna say which is always true with the Supreme Court so my question is wouldn't we be wise to wait for them to see what they say about the well I would I would ordinarily counsel prudence and and defer to the court's thought process but in this case we have a receivership where face masks protective face masks and the increasing death toll among Americans and the need for made in USA face masks I think gives this case an additional sense of urgency that would not otherwise exist we have a company that's making 75,000 face masks a day a rate of 1.5 million a month and the national stockpile is is depleted and the schools urgently need children's face masks we would respectfully submit that there is some urgency here to address the issue so that there's greater flexibility to expand this factory without going through a very lengthy receivership process of due diligence and triple checking I think I think you've answered my question I appreciate it I'll give you a couple minutes for rebuttal because we took you over thank you let's let's hear from the Commission good morning your honors may it please the court I'm Mark Hegedus for the Federal Trade Commission this case concerns what this court has affordable media decision as the great public interest in preserving assets for possible equitable relief and here five million dollars worth of assets are frozen and subject to the receivership but Carta's potential liability for defrauding consumers exceeds 18 million what's your view on Judge Hurwitz's question about AMG I mean if the Supreme Court rules that you know this kind of under this injunction your honor it really does depend on what the Supreme Court ultimately rules but in terms of the way the hypothetical was say suppose that they rule that section 13 the FTC loses in its argument on the scope of section 13 and they hold that it does not extend to this type of monetary relief does that mean that this injunction falls again your honor we'll have to see what the specific language is we would ask though that the court go ahead just gave you know you don't get to rewrite the hypothetical he just gave you the specific language specific languages that section 13 does not allow for restitution relief in a suit by the FTC that's that that's the opinion of if there's no ability to get any kind of equitable relief and the point of the injunction was to preserve assets for that equitable relief then yes I would have to agree with that but I would I would like to just point out that the district court should have the opportunity to rule in the first instance about what we might vacate and remand and send it back to the district court we're just trying to figure out as as a prudent matter whether or not the validity of the injunction may turn in part about what how the Supreme Court rules and I think what you're saying to us is that it's at least conceivable that the Supreme Court's ruling could affect the scope and validity of the injunction is that a fair statement yes it is your honor and in addition though that the section 19 in this I didn't see it in the complaint in this case would that be a safety net for any part of this or is that not we have not invoked section 19 in this your honor the district court though I would like to point out has a procedure already set up if the district court has granted summary judgment on liability in favor of the FTC but it has reserved ruling on remedy based upon the decision that come is handed down an AMG so with respect to disposing of this case now the in the current law this court can dispose of this case and reject the appeal and then allow the district court to rule in the first instance about how AMG should be applied based upon the fact record that has been established before the district court to address one other issue that you asked mr. Cardiff about mr. Cardiff did not appeal the original PI in this case right in that original in that original PI is clear that it reaches Cardiff's assets whenever acquired when the district court entered that PI it was aware of Cardiff's track record of lying about concealing and transferring his assets as well as his defiance of court orders and it cited that record and entering that PI and it was for that reason that the FTC proposed and the district court adopted this PI that reaches Cardiff's assets whenever they are acquired because we don't have an assurance that in new businesses that mr. Cardiff may start that there aren't assets coming from some of the illegal activity mr. Cardiff has refused to come clean with respect to his asset disclosures he's been found in contempt on a number of occasions for that reason and so it was certainly prudent and reasonable for the district court to enter a PI that extends to his current assets as a prudent measure to help ensure that there would be money available to provide equitable relief if at the end of the day mr. Cardiff were found liable I have a question yes is it your position that even after the seizure of these assets that a Cardiff has sufficient assets to proceed under this under whatever his business is making these masks or other things or as have all of his assets been seized your honor all of his assets are subject to the freeze but the receiver is working with mr. Cardiff and with mr. Betty to try to help VPN L be a profitable and lawful enterprise mr. Cardiff in fact is being paid along with mr. Betty to operate VPN L the receiver has authorized a release of funds so that VPN L can do the necessary upgrades to its facilities to produce these masks and so the ability for the business to continue and to make masks is there so the receivership is not impeding that with respect to the assets that are under that are frozen I would like to point out that Lou even if it does apply and if we can assume that it applies doesn't change the ability of the FTC to reach mr. Cardiff's assets whenever required and the reason for that is Lou has not changed did not impose a tracing requirement for assets what Lou addressed was the amount that may be reached to provide equitable relief at the end of a case arguing that if Lou is applied at least one of his arguments is that if Lou is applied the amount at stake is going to drop sufficiently that will implicate how much he can freeze so that matters whether Lou applies to the not just the tracing part of Lou but you know the the his arguments that Lou requires considering expenses and that therefore the amount will restitution will go down what's your response to that your honor Lou is satisfied in this for the following reasons the FTC has determined and and the district court also found that the potential equitable relief here is 18.2 million dollars now Lou says that the amount that is used to provide equitable can't exceed net profits so that means you need to deduct legitimate expenses from that with legitimate expenses that could be deducted from that 18.2 million dollar amount and so what we have here is potential liability of 18 2 million dollars and frozen assets totaling some 5 million dollars so you're arguing that you would win even within Lou that's right your honor there's some I want I want to I want some clarification on that as I read mr. Coachella's brief he says the district court refused to consider his claim of legitimate expenses is I'm not sure I can find that in the record but I want to ask you to address that yes your honor so mr. Cardiff and the defendants argued Lou on a number of occasions but in each one they never actually came forward with any numbers to prove that any of the expenses were legitimate the only thing that they pointed to was the receivers conclusions that f excuse me that the Redwood scientific business was a money-losing enterprise district court ever make a determination as to who was right under you know Lou if if you applying that standard we had to consider legitimate expenses to the district court determine who was writing whether the evidence had been met not in so many words your honor the district court did discuss in the VPL PI order the 18.2 million dollars in the amount that had been frozen but the district court did not specifically address the existence of legitimate expenses but the answer I give if Lou applies we have to send this back to be reconsidered so that that can be resolved your honor you could do that absolutely and and and then at that point the district court could make a ruling based upon the existing record there is a full record in this case the case is gone as has summary judgment has been decided here and so the district court could make a ruling about whether or not there has been a showing regarding legitimate expenses we believe though that that record shows that there has been no showing that there are legitimate expenses in this case there has been no can you help us out with respect to the status in the district court I know there's a summary judgment on liability is there a trial scheduled on remedy is there a schedule the schedule is that once the AMG decision is issued then the parties need to do a joint status report to address further proceedings the FTC expectation is that there will be not be a need for additional proceedings in terms of development of the record that the record is sufficient to apply whatever the AMG ruling is to this case but based upon what the AMG decision ultimately is the parties will work with the district court judge to determine what the subsequent proceedings will look like so did you also contend still that Lou doesn't apply at all your honor that that is our principal contention but for purposes of resolving this case this court does not need to reach that issue because of the fact that the standards of Lou are satisfied here the amount to be possibly paid in restitution is above 18 million the amount frozen is less than 5 million and the defendants here have not come forward to show legitimate expenses that could reduce that 18.2 million dollar figure so the District Court of Appeals here could affirm the district court on that basis alone but of that only if we were to take on in the first instance the work the district court has done in resolving that normally that would be something we'd send back and normally we would instead decide the issue whether Lou applies in the first place so tell me why it in your view it doesn't apply your honors you could actually make that determination just based upon this record and even in this record the defendants here have been able to cut could come forward and show what the legitimate expenses are but if you examine their briefs if you look at the by the Cardiff's to any legitimate expenses the only claim that they make with respect to Lou is that the Redwood Scientific Enterprise lost money but what we do know from the record and it is discussed even in the district court decisions is that the Redwood Scientific Enterprise spent millions of dollars on it's been about 3.2 million dollars to acquire these products to sell to consumers we now know that that was a fraudulent enterprise and so those expenses cannot be legitimate expenses under Lou so this court certainly could rule even based upon this record that Lou is not satisfied here for enough at Lou in fact is satisfied that the amount that has been frozen is far less than the amount of potential equitable monetary relief that would be order at the end of the case well but going back to the threshold question I mean given that in Commerce Planet we analogize the scope of the equitable relief available to that brought in discourseman actions by the SEC why wouldn't the limits in the FTC as well assuming AMG doesn't go even further I'm sorry your honor so right at the end of your question there was some interference so I didn't hear the last part of your question so I was asking given that we analogized in Commerce Planet the FTC's disgorgement restitution authority to that in SEC actions then why wouldn't lose limitations that apply to FTC cases I have two prongs to my response your honor first of all if Lou does apply we still should win here but secondly in Commerce Planet the this court actually recognized that the use of the term injunction in the FTC Act implies a then is available under the SEC Securities Exchange Act with its use of the term equitable relief that broader scope is defined by Porter which is of course what Lou relied on in imposing the limits it did it cited Porter as well so I don't that that doesn't seem to work well we believe that the fact that the Supreme Court cited to Porter affirmatively in Lou suggests that the view that this court took in Commerce Planet remains valid but but we'll know soon enough you know what this all means for the FTC Act once the AMG ruling comes down and the district court has already set up a mechanism to make a determination as to how AMG applies at the end of once that decision comes down your honors I see my time is up I'm happy to answer further questions let me let me see if either of my colleagues have other questions no if not we'll put a couple minutes on the clock for mr. Kuchel okay thank you your honors yes a couple of quick issues council raised the issue of the section 7 asset freeze provision one the issue was first framed as whether didn't the third provision you know override the first two provisions and I think we could also perhaps take a different view and say if the third provision has no temporal limitation then what is the point of the first two provisions which do limit the scope of the asset freeze so differences that they applied all defendants and the third one doesn't so so Cardiff was singled out for special treatment well we would respectfully take issue with the court on that but I understand the court the other council said that the receiver is not impairing VPL we didn't even start manufacturing operations for five months because of delays and and mistakes by the receiver some of which I wanted to ask you about that that that's a separate issue from your arguments about the limits of restitution is it not it is on this issue don't we you made those arguments to the district court the district court didn't buy them we review that for abuse of discretion right it's it is certainly again it gets down to you know the public interest and I recognize that overruling a preliminary injunction on the public interest factor is is rare if ever rarely if ever done but this is one of those cases where there's a national emergency where we think that there should have been some greater consideration and a different modification of it we do believe that when you talk about related versus unrelated to the subject matter of the case there has to be tracing otherwise how do you determine what's related secondly we think that the injunction in Redwood is tied directly to VPL but for the Redwood injunction there could be no injunction in VPL therefore while it's not directly appealed we think it's and there there was no I think the the receivers report is incredibly strong evidence for the very lengthy analysis of the assets and they said no net profits and we've taken you over and you've taken us over so we're even thank both sides for their arguments and briefing in this case and this case will be submitted. Thank you.
judges: Siler, Hurwitz, Collins